**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:18-cr-00136-APG-PAL |
| Plaintiff | **Order Granting in Part Government's Emergency Motion for Clarification** |
| v. | [ECF No. 74] |
| COLE LUSBY, | |
| Defendant | |

Defendant Cole Lusby was convicted of Failure to Register as a Sex Offender in violation of 18 U.S.C. § 2250(a), the federal Sex Offender Registration and Notification Act (SORNA). He was sentenced to 24 months and 7 days in custody. *See* Case No. 2:16-cr-00181-APG-PAL, ECF No. 44. Because there is no federal prison in Nevada, the federal Bureau of Prisons transported Lusby to a facility in Arizona to serve his time. Lusby's Judgment stated that, upon his release from imprisonment, he "must report to the probation office in the district to which [he] is released." *Id.* The Government admits that Lusby was "released" to the District of Nevada, which is where he was to report. ECF No. 67 at 2, n.1. After completing his custodial sentence, the Bureau of Prisons gave Lusby a bus ticket to Las Vegas, delivered him to the bus depot in Arizona, and told him to report to the Residential Reentry Center (RRC) in Las Vegas. Lusby returned to Las Vegas but did not report to the RRC or the probation office. He was later arrested and charged in this case with Failure to Register as a Sex Offender in violation of 18 U.S.C. § 2250(a).

Lusby moved to dismiss the indictment against him. ECF No. 30. During the August 6, 2018 hearing on the motion, I ordered the parties to file supplemental briefs addressing, among other things, whether a defendant must voluntarily travel in interstate commerce to be subject to

prosecution under § 2250. Specifically, in this case, the issue is whether Lusby's travel to and from Arizona in connection with his prison sentence in the prior case satisfies the interstate travel element of 18 U.S.C. § 2250. After considering the parties' supplemental briefs, we further discussed the issues at the August 28, 2018 Calendar Call. I ruled then that the interstate travel element requires that the defendant travel voluntarily.

The Government filed an emergency motion seeking clarification whether I find, as a matter of law, "non-custodial travel that is otherwise legally or situationally required to be voluntary or involuntary."[1] ECF No. 74 at 2. Due to the emergency nature of the motion and the impending trial date, my written decision here will be a truncated version of the analysis I stated on the record during the hearings on August 6 and 28.[2] I find that, to satisfy SORNA's interstate travel requirement, the defendant's travel must not be legally or physically compelled.

The Government also requests that I clarify whether I find that, in this specific case, Lusby's travel to Arizona and back to Nevada must be deemed involuntary because that travel would not have occurred but for the Government transporting him to Arizona to serve his sentence. *Id.* at 3. The Government contends in its motion that if I decide this question in the affirmative, it "would effectively compel dismissal of the indictment." *Id*. This is contrary to the Government's stated position at Calendar Call, when it announced that even if I rule that SORNA interstate travel must be voluntary, the Government has sufficient evidence to prove that Lusby traveled to Nevada voluntarily. Based in part on that representation, at the Calendar Call I denied Lusby's motion to dismiss based on the existence of genuine issues of material fact.

---

[1] I do not know what "situationally required" travel means so I will ignore that.

[2] Thus, the court of appeals, and anyone seeking to better understand the bases of my ruling, should review the transcripts of those hearings for a more fulsome explanation of my reasoning.

2

I do not know all the facts underlying Lusby's travel to Arizona and back to Nevada. Therefore, I will address the Government's emergency motion based on the parties' statements in court and in their papers. I surmise that Lusby was transported to Arizona by the Bureau of Prisons to serve his sentence. That would not constitute voluntary travel because Lusby was physically and legally compelled to travel there. Upon completing his custodial sentence, Lusby was given a bus ticket to Las Vegas, delivered to the bus depot in Arizona, and instructed to report to the RRC in Las Vegas. Lusby returned to Las Vegas but did not report to the RRC or to the probation office, and did not thereafter register as a sex offender in Nevada or update any prior registration.[3]

At the time he completed his imprisonment in Arizona, Lusby was forced to choose between returning to Nevada to comply with the Judgment against him—and thereby expose himself to SORNA liability by traveling in interstate commerce—or stay in Arizona to avoid interstate travel but thereby be in violation of the terms of his Judgment. Thus, his return to Nevada was legally compelled and not voluntary.

To me, this case presents an issue of federalism. Nevada makes it a crime for sex offenders to fail to register in Nevada. The federal version of such state registration statutes, SORNA, applies when interstate travel is involved. Congress intended "to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce." *Carr v. United States*, 560 U.S. 438, 456 (2010). The Supreme Court has recognized that, despite enacting SORNA, Congress has "given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such

---

[3] The parties disagree whether Lusby properly registered in Nevada before he was transported to Arizona.

offenders to federal criminal liability only when . . . they use the channels of interstate commerce in evading a State's reach." *Id.* at 452. "In enacting SORNA, Congress preserved this basic allocation of enforcement responsibilities." *Id.* at 451.

My interpretation of SORNA's interstate travel element upholds that allocation of responsibilities. Had the Bureau of Prisons not transported Lusby out of Nevada to serve his sentence, he would not have had to return to Nevada, and no interstate travel would have been involved. If he thereafter failed to register, he would be subject to prosecution under Nevada state law, but he could not be federally prosecuted. And there appears to be no reason Nevada could not prosecute him.

My concern is that the Government's interpretation would allow it to federalize a state law crime simply by transporting a defendant over the state line.[4] Even if this does not constitute "manufactured jurisdiction" (*see United States v. Archer*, 686 F.2d 670 (2d Cir. 1973)) or government misconduct, it is an unnecessary infringement on the states' "primary responsibility for supervising and ensuring compliance" with registration statutes. *Carr*, 560 U.S. at 452. And I see little if any distinction between being physically or legally compelled to travel interstate. If Lusby was involuntarily removed from Nevada and then legally compelled to return to Nevada, he did not voluntarily travel in interstate commerce and should not be federally prosecuted.

Contrary to the Government's argument (*see* ECF No. 67 at 8), SORNA's interstate travel element is not merely jurisdictional. "The act of travel by a convicted sex offender may serve as a jurisdictional predicate for § 2250, but it is also, like the act of possession [of a

---

[4] For instance, the Government could put a person in the back of a Marshal's car, drive him 20 feet over the state line, return him home, and thereby satisfy SORNA's interstate travel element through no action by the defendant. Admittedly, that did not occur here, but the Government's interpretation allows it.

4

weapon], the very conduct at which Congress took aim." *Id.* at 454. *See also, United States v. Cabrera-Gutierrez*, 718 F.3d 873, 878 (9th Cir. 2013) (same, and quoting *United States v. Sanders*, 622 F.3d 779, 783 (7th Cir.2010)).

The Government contends that, because Nevada has no federal prisons, my interpretation would give every Nevada federal prisoner a "free pass from federal registration, and this would vastly increase the potential that a sex offender will be 'lost.'" ECF No. 67 at 12. But that fear is belied by the facts. The Bureau of Prisons notifies the affected state authorities when it releases a prisoner who must register as a sex offender. *See*, *e.g.*, ECF No. 66 at 42-43 (Prisoner Release Notification to Nevada authorities about Lusby's release). Thus, if the Bureau of Prisons does its job, the states should be able to track sex offenders who are released from federal imprisonment just as if they had been released from state custody. And the risk would be no different if Nevada had a federal prison because Nevada prisoners would go into and out of federal custody without interstate travel but with the same notification to the state from the Bureau of Prisons. Subsequent federal prosecution would not be allowed or needed.

Under my interpretation of § 2250, Nevada federal prisoners would still be required to comply with the Nevada state registration laws. And they would be subject to federal prosecution if they traveled out of state voluntarily and thereafter failed to register or update their registration. On the other hand, the Government's interpretation would unnecessarily and unfairly expose every Nevada federal prisoner to federal prosecution by transporting them out of state simply because the Government chooses not to place a federal facility in Nevada.[5] Keep in mind that the purpose of SORNA is to prosecute federally only those "who threaten the efficacy

---

[5] If a Nevada federal prisoner was incarcerated only in Nevada (for instance, if he was sentenced to "time served" while in pre-sentence detention), was released in Nevada without traveling interstate, and later failed to register, he could not be federally prosecuted.

1 of the statutory scheme by traveling in interstate commerce." *Carr*, 560 U.S. at 453. Here, Lusby's travel to and from Nevada does not threaten the efficacy of the statutory scheme. Although he apparently failed to report and register upon his return to Nevada, both the federal and state law enforcement authorities were in the same position: neither was aware of his location. There is no evidence that state authorities could not have eventually found him in Nevada and prosecuted him in state court.

For these reasons, and those previously stated on the record, I find that, to satisfy SORNA's interstate travel requirement, the defendant's travel must not be legally or physically compelled. Lusby's travel from Nevada to Arizona was not voluntary as a matter of law. And if Lusby's return to Nevada was legally compelled, it also was not voluntary as a matter of law.

Because of the emergency nature of the Government's motion and the impending trial date, the Government is ordered to serve its motion and this order upon Mr. Lusby by overnight delivery at the Nevada Southern Detention Center (NSDC). In addition, the Government's lawyers must make reasonable efforts to immediately contact Lusby by phone and email at NSDC to tell him about the Government's motion and this Order.

At the parties' request, I consolidated the trial in this case with the revocation proceedings in Case No. 2:16-cr-00181-APG-PAL. If the Government intends to take an interlocutory appeal of this Order, the revocation hearing will proceed as scheduled on September 4, 2018 absent a stipulation from the parties or an order from this court.

////
////
////
////

6

IT IS THEREFORE ORDERED that the Government's emergency motion for clarification **(ECF No. 74) is GRANTED IN PART**. I have clarified my rulings on the legal questions requested by the Government.

DATED this 30th day of August, 2018.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE